## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **MY NEST, LLC, and ROBERT BLAKE, on behalf of themselves and all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 1:25-cv-356** |
| **v.** | ) ) | |
| **THE UTILITIES BOARD FOR THE CITY OF BAYOU LA BATRE, DAN MCCRORY, in his official capacity as director of the Utilities Board for the City of Bayou La Batre, and DAN MCCRORY, in his individual capacity,** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## <u>CLASS ACTION COMPLAINT</u>

COMES NOW the Plaintiffs My Nest, LLC ("My Nest") and Robert Blake ("Blake") (collectively "Plaintiffs"), by and through the undersigned counsel of record, on behalf of themselves and all others similarly situated, and files this Class Action Complaint against Defendants The Utilities Board for the City of Bayou La Batre, and Dan McCrory, in his official capacity as Director of the Utilities Board for the City of Bayou La Batre and in his individual capacity (collectively "Defendants" unless context dictates otherwise). In support thereof, Plaintiffs state as follows:

1

## PARTIES, JURISDICTION, and VENUE

1.    Plaintiff My Nest, LLC is an Alabama limited liability company. Paige Howard, an adult citizen of Alabama, is its majority in interest member.

2.    Plaintiff Robert Blake is an adult domiciled in the State of Alabama.

3.    Defendant the Utilities Board for the City of Bayou La Batre (the "Utilities Board") is an independent governmental entity responsible for the City of Bayou La Batre's water and sewer utilities.

4.    Defendant Dan McCrory ("McCrory") is the Director of the Utilities Board.  McCrory is being named herein in his individual and personal capacity, in addition to in his official capacity, because his actions as alleged herein were fraudulent, self-enriching, and beyond any justifiable scope of his role with the Utilities Board.

5.    The Defendants (collectively, the Utilities Board and McCrory) are attempting to extract unauthorized, unconstitutional, and illegal "Tap Fees" and "Impact Fees" as a condition of allowing Plaintiffs to utilize City water and sewer facilities.

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action that arises under the Constitution and laws of the United States.  Specifically, Plaintiffs are asserting claims under the Takings Clause of the 5th and 14th Amendments of the United States Constitution and the Equal Protection

Clause of the 14th Amendment of the United States Constitution.  This Court has supplemental subject matter jurisdiction over Plaintiffs' state law claims because they are so related to Plaintiffs' federal claims that they form part of the same case and controversy.

7.    Venue is proper in this Court because this Court encompasses Mobile County, AL.  All the Defendants reside in Mobile County, AL, and the events and omissions giving rise to Plaintiffs' claims occurred in Mobile County, AL.

## FACTS

8.    Under Alabama law, municipal entities, such as the Board, have no authority to assess taxes unless explicitly authorized to do so by the Alabama legislature.

9.    The Alabama legislature has not explicitly authorized any of the Defendants to assess or collect taxes of the type that are at issue in this litigation.

10.    In limited circumstances, governmental entities are permitted to assess certain fees, such as "impact fees," when specifically authorized by statute or when such fees are within the scope of other authorizing legislation. These fees must be used solely to defray project-specific costs, rather than generally raise revenue for the entity. If they perform the function generally raising revenue, they are considered taxes.

11.    Very few counties have been authorized by the Alabama legislature to assess and collect impact fees.  For example, on April 4, 2006, the Alabama Legislature approved Alabama Legislative Act No. 2006-300, codified at Ala. Code § 45-2-243.80, *et. seq*. (the "Act") which authorized Baldwin County, Alabama and municipalities in Baldwin County to "assess and collect impact fees on new development for governmental infrastructure purposes."

12.    No such statute has been passed authorizing Mobile County or municipalities therein—such as the Board—to collect impact fees.

13.    Even when municipal entities are appropriately authorized to collect impact fees (which has not occurred here), the municipality must pass an ordinance expressly authorizing the impact fee and, among other things, addressing its scope and how it will be determined and calculated with respect to developments.

14.    Neither Mobile County nor the City of Bayou La Batre has passed any ordinance permitting the Board to assess impact fees.

15.    The Utilities Board has putatively passed certain resolutions regarding impact fees, including but not limited to Resolution Nos. 11-07-01, 03-08-2, 03-08-1, 1003-1, 0506-01, and 03-11-14.

16.    For example, Resolution No. 3-11-14, which is meant to assess impact on fees on RV parks, is premised on the absolutely nonsensical proposition that "The Utilities Board has determined that a change in the calculation of impact fees related

4

to commercial recreational vehicle (RV) parking and placement is necessary to further the economic expansion in the community associated with modifications of commercial sewer and water impact fees." In simpler terms, the Utilities Board believed it needed to change impact fees because of economic expansion caused by changes to impact fees.

17.     Resolution No. 3-11-14 set tap fees at $440 for each water tap and $500 for each sewer tap. Under that Resolution, the entire Dockside RV Park should have been connected to the Utilities Board's system for a total of $990.00 given that it will operate with one of each tap. A copy of Resolution No. 3-11-14 is attached hereto as **Exhibit 1**.

18.     Further, when impact fees are assessed, the amount of the fee assessed against a citizen must be attributable to the costs necessitated by the new development for which the fee is being assessed.

19.     At some point prior to November 2024, despite having no legislative or ordinance authorizing it to do so, the Board and/or McCrory retained Krebs Engineering to produce a purported "Development Impact Fee Study" (hereinafter the "Krebs Report").

20.     The Krebs Report purports to "evaluate the existing development impact fee structure and revise as required." Ultimately, the Krebs Report made recommendations of certain water and wastewater impact fees to be charged to

certain types of developments.  A copy of the Krebs Report is attached hereto as **Exhibit 2**.

21.    The Krebs Report contains inadequate justification for many of its assumptions and conclusions.  By way of just one example, the Krebs Report included virtually no justification whatsoever for the "Equivalent Residential Unit" factors that it recommended be applied to each development type.

22.    In addition, the Krebs Report does not review or analyze any specific development, nor does it provide leeway for the Utilities Board to do so. Rather, it is based on generalities and recommends impact fees be assessed based on the type of business being developed, but has no constraints as to the number of businesses or how greater numbers might affect systems differently.  For example, the Krebs Report recommends that every day care, residence, condominium, gas station, restaurant, RV park, etc. be charged an impact fees that is based solely on a multiplicative factor that is determined by the business type at issue, with no consideration whatsoever to the impact of the actual specific business that is seeking to be connected to the City's utilities.

23.    Plaintiff My Nest is seeking to develop an RV Park called Dockside RV Park that is located within the area serviced by Utilities Board water and sanitary sewer systems.

24.    Plaintiff My Nest initiated work on the development and, upon requesting to connect the subject RV park to Board water and sewer to commence operations, Plaintiffs were shocked when advised by McCrory that Plaintiffs would be required to pay $131,017.50 in tap fees and impact fees to the Board.  However, this amount was only for **27 RV pads** (or $4,852.50 per pad), and Plaintiff My Nest told the Defendants it planned to construct 120 pads. As a result, following the logic of Defendants' original invoice, Plaintiff will end up paying $788,000 in impact fees to Defendants simply to connect to water and sewer for a 120 pad RV park if Defendant has its way.

25.    Plaintiffs were advised that, if they failed to pay these extortionate impact fees, the Board would refuse to connect the RV Park development to the City's water and sewer facilities.

26.    Further, Defendant McCrory informed My Nest that it would be required to have a six inch meter, even though Plaintiff's engineer informed Defendants that only a one inch meter would be required.

27.    Defendant McCrory explicitly represented that the prior owner of My Nest's property never paid an impact fee for the 18 pads that had already been constructed.

28.    In addition to being wholly unauthorized, the $131,017.50 (or up to $788,000) in purported impact and tap fees is blatantly excessive and has no rational

relation whatsoever to the actual impact of Dockside RV Park on the Board's infrastructure. One example of the egregious and unfounded nature of the demand is that McCrory and the Board demanded Plaintiffs pay 27 water tap fees and 27 sewer tap fees (one for each RV lot) when, in reality, the entire park is on one meter and one sewer connection and, therefore, only requires the Board to perform one water tap and one sewer tap.

29.    Any impact fees on the Dockside RV Park are also unjustified, unauthorized, arbitrary, capricious, and unconstitutional because impact fees had already been paid on the Dockside RV Park by a prior owner for a development that included 18 pads.

30.    McCrory and Board have acted in concert to defraud Plaintiff My Nest and explicitly represent that no impact fees had ever been paid on its property. Upon information and belief, these actions were part of a long-running scam to extort and extract additional impact fees from prospective developers. As a direct result of McCrory and the Board's long-running fraud, development has been significantly stymied in the Bayou La Batre community, much to the chagrin of property owners, residents, and the City government itself.

31.    In 2025, a dispute arose between My Nest and the Board as to the amount of impact fees due. In response to a letter sent by Plaintiff's counsel, counsel for the Board, Jay Ross, sent a letter outlining that $52,622.50 in fees would be due

to connect both water and sewer for 27 pads to the Board's systems. Plaintiff paid that amount under protest so that her project could proceed forward.

32.     Despite that payment, the Board refused to connect Plaintiff My Nest to sewer. Plaintiff was then harassed by Board members and McCrory who repeatedly rode by her property in their luxury SUV purchased with Board funds (upon information and belief including impact fee funds) and screamed at Plaintiff's principal to "read your letter" which they contend only pertains to water, not sewer, despite explicitly setting forth fees for "Sewer impact fees". A copy of that letter from Jay Ross, attorney for the Utilities Board, is attached hereto as **Exhibit 3**.

33.     McCrory and the Board have offered no justification or explanation for the demanded impact fees as it relates to Plaintiffs' business; instead, they are apparently relying solely on the Krebs report which performed no analysis whatsoever of the impact of Plaintiffs' Dockside RV Park.

34.     Defendants are also not calculating impact fees relative to governmental infrastructure necessitated by and attributable directly to new developments against which the fees are being assessed but, rather, are asserting general fees across entire categories of development.  Thus, despite calling them "impact fees," the fees are actually an unauthorized tax on certain types of developments due to the manner in which Defendants are assessing them.

35.    Upon information and belief, the Board is not only using impact fees to defray the burden of new development on its systems, but to fund overhead, salaries, vehicles, employee benefits, maintenance of existing systems, and infrastructure wholly unrelated to the property on which fees are assessed. All of the above is blatantly unlawful and unconstitutional.

36.    Upon information and belief, McCrory is utilizing impact fee revenue for personal enrichment. For example, McCrory told My Nest's principal that an emergency water line was necessary for her project, and could be put in at a cost of $90,000 by himself using the Board's equipment, which would 'speed up the approval process.' Plaintiff My Nest subsequently learned that the line would only cost $9,000, meaning that McCrory intended to pocket an additional $81,000 of pure profit as a result of Plaintiff hiring him to do the work. This arrangement would have been an unlawful *quid pro quo* between Plaintiff being asked to pay him for work at grossly inflated values in exchange for his help 'speeding up' the approval process. As another example, McCrory was recently driving around in a newly-purchased 2025 Ford Expedition, having an MSRP of approximately $92,000, at Plaintiff My Nest's property to taunt its principal and workers out of the window. Plaintiff believes that impact fee funds have been spent on unnecessary and frivolous expenses, including this luxury vehicle being used for personal and business uses by the director of a small town utilities board. As another example, Defendant McCrory

attempted to pressure Plaintiff My Nest's principal Howard into selling him a luxury vehicle for his family "at cost" in an apparent effort to exchange favors with the Board for remuneration for himself.

37.    Plaintiff Blake bought an old mechanic shop in Bayou La Batre in order to restore the same and open a mechanic business. Similar to both My Nest and every other member of the Proposed Class, Defendant has sought to assess various ad-hoc, unauthorized fees. These included $1,500 for a water tap, $1,950 for a sewer tap, $2,000 for a "sewer capacity fee", $1,500 for a bore fee, and $1,500 for a permit fee. None of these fees are tied to actual costs of the Board, but rather are an attempt to generally fund the entire Board and all of its expenses, including the personal expenses of Board members and McCrory.

## CLASS ACTION ALLEGATIONS

38.    This action is brought and may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The requirements of Fed. R. Civ. P. 23 are met with respect to the "Proposed Class" defined as follows:

> All persons who have been charged by Defendants for: (1) impact fees required for connection to City water and sewer facilities; and/or (2) sewer and water tap fees that exceeded the number of taps actually provided during the ten (10) year period preceding the filing of Plaintiffs' Complaint.

> Excluded from the Class are Defendants, any entity in which any Defendant has a controlling interest or which has a controlling interest of any Defendant, and Defendants' legal representatives, assigns and

successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

39.    Plaintiffs reserve the right to redefine the Proposed Class prior to class certification.

40.    The members of the Proposed Class are so numerous that joinder of all members is impracticable. The exact number of Proposed Class members is unknown but estimated to be in excess of 200.

41.    There are questions of law and fact common among members of the Proposed Class, including:

    a.  Do Defendants lack authority to assess the taxes and/or fees they are assessing and collecting from residents and property owners of Bayou La Batre?

    b.  Is Defendants' calculation and assessment of impact fees unlawful?

    c.  Is Defendants' calculation and assessment of tap fees unlawful?

    d.  Is Defendants administration of impact fees and tap fees unlawful?

    e.  Are Plaintiffs and the Proposed Class entitled to injunctive relief, declaratory relief, restitution, and other equitable relief?

25.    The claims of Plaintiffs are typical of the claims of the Proposed Class. Plaintiffs have been assessed tap fees and impact fees by Defendants in violation of Alabama law, the Alabama Constitution, and the United States Constitution in the same manner as all other class members.

12

26.     Plaintiffs will fairly and adequately assert and protect the interests of the Proposed Class. Specifically, Plaintiffs have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the class, and they have no conflict of interest that will interfere with the maintenance of this class action.

27.     A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a.     The common questions of law and fact set forth herein predominate over any questions affecting only individual class members;

b.     The Proposed Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

c.     There are no unusual legal or factual issues which would create manageability problems;

d.     Prosecution of separate actions by individual members of the Proposed Class would create a risk of inconsistent and varying adjudications against Defendants; and

e.     Adjudications with respect to individual members of the Proposed Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests.

## COUNT I – DECLARATORY JUDGMENT

28.     Plaintiffs reallege and incorporate paragraphs 11 through 37 as if alleged herein.

29.     Defendants have assessed tap fees and impact fees in a manner in which they constitute a tax, which Defendants have no authority to assess or collect.

30.     Alternatively, to the extent the tap fees and impact fees are considered fees versus taxes, Defendants still lack authority to assess or collect such fees because there is no authorizing legislation or ordinance.

31.     In addition, Defendants are collecting tap fees for taps that are not actually being installed.

32.     Defendants are also collecting tap fees and impact fees on taps when the Defendants had already previously collected tap fees on the same taps.

33.     Defendants are assessing and collecting purported tap fees and impact fees that are not only unauthorized, but also arbitrary and capricious with respect to the developments for which they are being assessed.

34.     Defendants have calculated and imposed tap fees and impact fees in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.

35.    Defendants have calculated and imposed tap fees and impact fees in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT II – UNCONSTITUTIONAL CONDITION

36.    Plaintiffs reallege and incorporate Paragraphs 11-37 as if alleged herein.

37.    As an express condition of allowing residents to utilize City water and sewer utilities, Defendants have required and continue to require Plaintiffs and the Proposed Class to pay unauthorized and excessive tap fees and impact fees.

38.    The Takings Clauses of the Fifth and Fourteenth Amendments to the United States Constitution prohibit Defendants from impermissibly burdening the right to not have property taken without just compensation in the land-use context.

39.    In order for the exaction of tap fees and impact fees to constitute permissible conditions under the Takings Clause, it must have an essential nexus and rough proportionality to the effects of the proposed use of the property at issue. Defendants have failed to adequately conduct individualized inquiries to ensure an essential nexus and rough proportionality are met.

40.    Defendants' exaction does not have an essential nexus to the effects of the proposed new use of the specific property issue because, among other things:

a.    Defendants have never conducted any individualized inquiry for each property assessed to establish an essential nexus between the effects of the proposed new use of the property and the exaction, as the Krebs Report clearly does not meet this requirement;

b.    Defendants did not rely on any specific public detriment related to the properties of Plaintiffs or the Proposed Class to justify the exaction;

c.    Any putative public detriment related to the properties of Plaintiffs or the Proposed Class was not essentially related to Defendants' exaction because the tap fees and impact fees do not address any concerns used to justify the exaction;

d.    Defendants' exaction does not substantially justify any government purpose that would have justified the denial of the building permits of Plaintiffs and the Proposed Class.

e.    Tap fees and impact fees have not been properly adjusted, they have not been properly accounted for, they have been commingled with other funds, and have not been put to uses with a nexus to the properties from which they were exacted.

41.    Defendants' exaction is not roughly proportional to any public detriment related to the properties permitted for Plaintiffs and the Proposed Class because, among other things:

16

a.    Defendants have never conducted any individualized inquiry for each property assessed to establish a rough proportionality between the effects of the proposed new use of the property and the exaction;

b.    Defendants did not rely on any specific public detriment related to each assessed property to justify the exaction;

c.    Any putative public detriment related to the approval of each property was substantially outweighed by the extent and gravity of the exaction, which merely led to a windfall to Defendants.

d.    Impact fees and tap fees were and are used for purposes that do not putatively require tap fees and impact fees, showing that they are not roughly proportional to offsetting the putative public detriment.

42.    Plaintiffs and the Proposed Class have been extorted by, have actually paid, or caused to be paid the impact fees at bar, or they have been stymied from developing their property by these unlawful impact and tap fees.

## COUNT III – EQUAL PROTECTION

43.    Plaintiffs realleges and incorporate Paragraphs 11-37 as if alleged herein.

44.    Defendants have violated the Equal Protection Clause of the Fourteenth Amendment in at least two ways: (a) by treating Plaintiffs and the Proposed Class differently from developers that have been exempted from the payment of impact fees; and (b) by treating Plaintiffs and the Proposed Class differently from local residents.

45.    Plaintiffs and the Proposed Class have all sought to construct developments within the City.

46.    As a condition of receiving access to City water and sewer utilities, Defendants have demanded that Plaintiffs and the Proposed Class pay unauthorized and excessive tap fees and  impact fees.

47.    Defendants have, upon information and belief, acted as though they have complete inherent discretionary authority to decide which developers will and will not be forced to pay the excessive tap fees and impact fees, with no rationale or rational basis.

48.    While Plaintiffs and the Proposed Class have all had to pay impact fees, Defendants have arbitrarily and without rational basis exempted a number of developers from such payment, including local residents.

49.    Defendants have no rationale or rational basis for treating such other classes differently than Plaintiffs and the Proposed Class.

## COUNT IV – SECTION 223 VIOLATION
### (As *per se* actionable conduct, or sounding in negligence, recklessness, willfulness, or intentional interference)

50.    Plaintiffs reallege and incorporate Paragraphs 11-37 as if alleged herein.

51.    Ala. Const. Art. XII, § 223 provides:

No city, town, or other municipality shall make any assessment for the cost of sidewalks or street paving, **or for the cost of the construction of any sewers against property abutting on such street or sidewalk so paved**, or drained by such sewers, in excess of the increased value of such property by reason of the special benefits derived from such improvements.

52.    Upon information and belief, Defendants assess, and Plaintiffs and the Proposed Class have paid or are being extorted to pay, certain tap fees and impact fees, effectively as a condition for the development of land, that is used to pay for the costs of sidewalks, street paving, and/or sewers.

53.    The amount of such fees charged for the development of the property of Plaintiffs and the Proposed Class is in excess of the increased value of such properties by reason of the special benefits derived from such infrastructure improvements.

## COUNT V – EQUITABLE CLAIM FOR RECOVERY OF INTEREST IN LAND AND SETTLEMENT OF RESULTING/CONSTRUCTIVE TRUST

54.    Plaintiffs reallege and incorporate Paragraphs 11-37 as if alleged herein.

19

55.     As set forth herein, Defendants have assessed tap fees and impact fees that are not legally authorized and, in any event, have failed to calculate and collect impact fees in a manner consistent with the United States Constitution, Alabama law, and the Alabama Constitution.

56.     As set forth herein, Defendants have failed to administer collected tap fees and impact fees as required by law.

57.     Tap fees and impact fees being assessed and collected are "interests in land" under Alabama law because (a) they are being treated as liens on property, and (b) they at least nominally benefit and burden real property.  Moreover, the Supreme Court of the United States has ruled that impact fees are "functionally equivalent" to other real property interests that permitting authorities could demand from landowners in exchange for issuing building permits. *Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595, 612 (2013). Because developers are required to pay impact fees "in lieu of" foregoing other property rights, such fees are treated as interests in real property, and must comport with the Supreme Court's Takings jurisprudence. *Id*.

58.     By operation of law, Defendants' collection and retention of funds to which it is not entitled have created a resulting or constructive trust with a *res* of all impact fees collected, for the benefit of Plaintiffs and the Proposed Class, with Defendants as trustee.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a judgment in favor of Plaintiffs and the Proposed Class for the following relief:

A.     Enter a declaratory judgment, declaring that: (1) Defendants have no authorization to assess or collect tap fees and impact fees; and (2) all tap fees and impact fees that have been paid to Defendants were illegal and must be refunded to Plaintiffs and the Proposed Class.

B.     Enter a preliminary and permanent injunction: (1) prohibiting Defendants from collecting tap fees and impact fees in a manner inconsistent with Alabama law, the Alabama Constitution, and the United States Constitution; and (2) requiring Defendants to allow Plaintiffs to access and utilize City utilities at the fees customarily charged, without the subject impact and tap fees.

C.     Order Defendants to refund all impact fees paid to the Proposed Class members.

D.     Award Plaintiffs and the Proposed Class compensatory damages and prejudgment interest.

E.     Award Plaintiffs and the Proposed Class their reasonable costs and attorneys' fees under 42 U.S.C. § 1988, the special equity doctrine, the public benefit doctrine, the common fund doctrine, and Ala. Code § 18-1A-32(b).

F.     Award Plaintiffs and the Proposed Class punitive damages.

G.    Enter all such relief against Defendant Dan McCrory personally on the basis that his actions were fraudulent and impermissibly beyond the scope of his role as Director of the Board.

H.    Such other and further relief as the Court may find just and proper under the circumstances.

**PLAINTIFFS DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES SO TRIABLE**

Respectfully Submitted,

*/s/ Kristopher O. Anderson*
KRISTOPHER O. ANDERSON
AL Bar No.: ASB-4318-O68A

*/s/ John Parker Yates*
JOHN PARKER YATES
AL Bar No.: ASB-1155-O68Y

*/s/ Robert S. Walker*
Robert S. Walker
AL Bar No.: ASB-7312-L17F

*/s/ Michael A. Rogers*
MICHAEL A. ROGERS
AL Bar No.: ASB-8291-G67A

YATES ANDERSON
4851 Wharf Parkway, Ste D-230
Orange Beach, AL 36561
kris@yatesanderson.com
parker@yatesanderson.com
robert@yatesanderson.com
mike@yatesanderson.com
*Attorneys for Plaintiffs*