**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MY NEST, LLC, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:25-00356-JB-N** |
| | ) | |
| **THE UTILITIES BOARD FOR THE CITY OF BAYOU LA BATRE, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on the Motion to Dismiss filed by Defendants Utility Board of the City of Bayou La Batre ( "Board"), Dan McCrory, in his individual capacity and in his official capacity as the director of the Board, Silvia Raley, Virginia Bryant, Jeffrey Ladnier, Roger Milney, and Kimberlyn Barbour, each in their individual capacities and in their official capacities as board members of Board ("Individual Board Members"), and the Water Supply Board of the City of Bayou La Batre ("Water Supply Board") (sometimes collectively herein "Board Defendants"). (Doc. 35). Plaintiffs filed a Response in Opposition (Doc. 53) and Defendants filed a Reply (Doc. 57). Defendant Virginia Bryant, as Personal Represent of the Estate of Alan C. Bryant, join in the Motion to Dismiss. (*See* Docs. 52 and 78).

Upon due consideration, and for the reasons stated herein, the Court concludes the Motion is due to be GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

In the operative First Amended Complaint (Doc. 18 ("FAC")), Plaintiffs allege the Board is an independent governmental non-profit entity responsible for the City of Bayou La Batre's water and sewer utilities. (Doc. 18). The FAC asserts, "in limited circumstances, governmental entities [such are the Board] are permitted to assess certain fees, such as 'impact fees,' when specifically authorized by statute or when such fees are within the scope of other authorizing legislation." The FAC asserts impact fees "must be used solely to defray project-specific costs, rather than generally raise revenue for the entity."

Plaintiffs allege the Board is not authorized to collect impact fees. According to Plaintiffs, neither Mobile County nor the Board has passed any ordinance enabling the Board to assess fees. Nevertheless, Plaintiffs allege, the Board "putatively passed certain resolutions regarding impact fees," including Resolution Nos. 11-07-01, 03-08-2, 03-08-1, 1003-1, 0506-01, and 03-11-14. Resolution 03-11-14, adopted by the Board on March 11, 2014, is made an exhibit to the FAC. (Doc. 18-1). According to Plaintiffs, Resolution 03-11-14 was not based on "any scientific or other meaningful analysis but, rather, simply set impact fees in whatever amounts the Utilities Board decided to assess at that time."

Beginning in 2016, the Board commissioned reports for the purpose of updating its impact fee provisions, including those adopted in the March, 2014 Resolution 03-11.14. The Board first engaged Beale Engineering, LLC, instructing it to develop impact fees to "offset the cost of future capital improvements and determine if those fees are reasonable for that area." (Doc. 18-2). Plaintiffs allege individual Board members and Bryant intervened and affected Beals' analysis and the content of its reporting. Beals' final report is dated November 15, 2016, and the Board

adopted it in a December 2016 resolution. (Docs. 18-4 and 18-5). The final Beal report estimated future capital improvement requirements at over $30 million. However, Plaintiffs allege the capital improvements identified in Beals' report "in reality, cost the Utilities Board **nothing**" and were wrongfully used to justify the assessment of impact fees. (Doc. 18 at PageID.113 (emphasis in original)). Plaintiffs also allege the Board, since its 2016 adoption of the Beale report, has been "massively inconsistent in its application of impact fee assessments." (Doc. 18 at PageID.113).

Plaintiffs allege, "[a]t some point prior to November 2024, . . . the Utilities Board and/or McCrory commissioned Krebs Engineering to produce an updated purported 'Development Impact Fee Study.'" (Docs. 18 and 18-6). "The Krebs Report purports to 'evaluate the existing development impact fee structure and revise as required.'" (*Id.*). Plaintiffs allege the Krebs report suffers same defects as the Beale report. According to Plaintiffs, "the Krebs Report was a ruse to accomplish the Utilities Board's true goal—to justify an ongoing increase in the impact fee structure via unjustified rates and inexplicable changes in the calculations." (Doc. 18 at PageID.116).

Plaintiffs allege they continue to be injured by Defendants' assessment, calculation, and collection of impact or "tap" fees. Apart from the Board's alleged lack of assessment authority, Plaintiffs argue the assessments are unconstitutional because the fees are not used to defray project-specific costs, and they lack an "essential nexus" with and are not "roughly proportional" to the impact of proposed developments. These defect, according to Plaintiffs, render the assessments invalid under *Nollan* v*. California Coastal, Comm'n*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994).

Plaintiffs challenge Defendants' justifications of impact fees because they are based on capital projects paid for by grant funds or on capital projects that were never completed. Further, Plaintiffs allege various Defendants engaged in self-dealing or financial mismanagement of collected impact fees.

Plaintiff My Nest, an Alabama LLC, seeks to develop an RV park in an area serviced by the Board. My Nest claims it was required to pay exorbitant impact and tap fees bearing no relation to the impact of the development. My Nest alleges its refusal to pay would result in the Board's refusal to connect water and sewer. It further alleges some of the demanded impact fees had already been paid or waived. My Nest alleges it ultimately paid water and sewer fees "under protest," and that the Board continued to refuse to connect sewer.

Plaintiff Mareno alleges he was required to pay exorbitant, unrelated impact fees to connect to a single camper. He alleges he has been billed for services never rendered. Plaintiffs Blake and Higgins purchased properties to restore. They likewise allege they were required to pay fees bearing no relation to the impact of their respective businesses. Higgins alleges he requested connection to sewer in 2022, but that "Defendants sought to assess various ad-hoc and constantly-escalating unauthorized fees as a condition of obtaining access to municipal sewer and water." (Doc. 18 at PageID.127).

The FAC asserts eight Counts: Count I for Declaratory Judgment - Unconstitutionality of Impact Fees and Tap Fees, Count II for Declaratory Judgment – Lack of Qualified Immunity, against all individual Defendants, Count III – Unconstitutional Condition, Count IV – Equal Protection, Count V – Alabama Section 223 Violation, Count VI – Recovery of Interest in Land and

Settlement of Resulting/Constructive Trust, Count VII for Fraud, and Count VIII for Unjust Enrichment.

## II. STANDARD

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations in the light most favorable to the plaintiff and accept the allegations of the complaint as true. *Speaker v. U.S. Dep't of Health & Human Servs*., 623 F.3d 1371, 1379 (11th Cir. 2010). To avoid dismissal, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations and quotations omitted). The Court should not assess "whether a plaintiff will ultimately prevail but" consider "whether the claimant is entitled to offer evidence to support the claims." *Id.* at 583 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556. "The Supreme Court's *Twombly* formulation of the pleading standard 'does not impose a probability requirement at the pleading stage,' but

instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Williams v. Henry*, 2009 U.S. Dist. LEXIS 96379, *6 (S.D. Ala. Sept. 14, 2009) (citations and internal quotations omitted), adopted 2009 U.S. Dist. LEXIS 96382 (S.D. Ala. Oct. 15, 2009). "A district court may properly dismiss a complaint if it rests only on 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts.'" *Magwood v. Sec y, Florida Dep't of Corr.*, 652 F. App'x 841, 843 (11th Cir. 2016), cert. denied sub nom. *Magwood v. Jones*, 580 U.S. 1073, 137 S. Ct. 675, 196 L. Ed. 2d 560 (2017) (quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).

## III. ANALYSIS

### a. Individual Claims and Qualified Immunity:

The Court first addresses the Board Defendants' Motion to Dismiss Plaintiffs' Takings, Unconstitutional Condition, and Equal Protection claims against McCrory and the Individual Board Members, both in their official and individual capacities. Plaintiff does not oppose the Motion to Dismiss as it related to their damages claims against McCrory and the Individual Board Members in their official capacities. (Doc. 53 at PageID.400). However, Plaintiffs do oppose dismissal of their official capacity claims against them for prospective injunctive relief. (*Id.*). The Court concludes Defendants' unopposed Motion to Dismiss damages claims against McCrory and the Individual Board Members in their official capacities is well taken and due to be GRANTED.

Defendants move to dismiss Plaintiffs' Takings, Unconstitutional Condition, and Equal Protection claims against McCrory and the Individual Board Members in their individual capacities based on qualified immunity. The doctrine of qualified immunity shields public officials from individual liability based on conduct that does not violate a "clearly established"

constitutional right. *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019). Qualified immunity "allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002).

In analyzing qualified immunity, courts look first to whether the defendant acted within his discretionary authority. Plaintiff concedes this aspect of qualified immunity for the limited purpose of the instant Motion to Dismiss. This concession leaves Plaintiffs with the burden to demonstrate "that qualified immunity isn't appropriate." *Huebner v. Bradshaw*, 935 F.3d 1183, 1187 (11th Cir. 2019).

To satisfy their burden, Plaintiff must show "both (1) that [they] suffered a violation of a constitutional right and (2) that the right [they] claim was 'clearly established' at the time of the alleged misconduct." *Id.* (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citing H*ope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002), and *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). The Court may address these two aspects of Plaintiffs' burden in either order. *Huebner*, 935 F.3d at 1187 (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). "Even if a plaintiff can point to a constitutional violation, the existence of that violation is not enough to defeat qualified immunity. The unconstitutionality of the defendant's particular conduct must have been clearly established at the time of the violation." *Hughes v. Locure*, 166 F.4th 121, 128 (11th Cir. 2026). The Court turns first, and ultimately dispositively, the question of whether Plaintiffs have demonstrated a violation of a "clearly established" constitutional right.

In analyzing Plaintiffs' argument of a "clearly established" constitutional right, the "'salient question . . . is whether the state of the law' at the time of the violation gave officials

'fair warning' that their conduct was unconstitutional." *Locure*, 166 F.4th at 129 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). "The notice must be clear to 'every reasonable official,' and it must place the law 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). *See also, Minnifield v. City of Birmingham Dep't of Police*, 791 F. App'x 86, 90 (11th Cir. Oct. 30, 2019) ("A plaintiff need not identify a case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" (quoting *White v. Paulhey*, 580 U.S. 73, 79 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

In a recent opinion, the Eleventh Circuit reiterated,"[c]learly established rights cannot be defined 'at a high level of generality.'" *Hubbert v. Brinley*, 2026 U.S. App. LEXIS 27440, *7 (11th Cir. Sept. 3, 2026) (quoting *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019)). "Instead, [clearly established rights] must be narrowly construed and 'defined with specificity.'" *Id.* In the Eleventh Circuit, a "clearly established right" can be demonstrated in three (3) ways. The Court in *Hubbert v. Brinley* explained:

> In our circuit, plaintiffs can show that a right is clearly established in one of three ways. First, they can point to a "materially similar decision of the Supreme Court, of this Court, or of the supreme court of the state in which the case arose" to demonstrate that existing precedent has clearly established the law. *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022). Second, they can demonstrate that a "broader, clearly established principle" from existing case law "should control the novel facts in this situation." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). *See also Powell*, 25 F.4th at 920. Or third, they can convince us that their "case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Mercado*, 407 F.3d at 1159.

2026 U.S. App. LEXIS 27440, at *6 - 7.

Plaintiffs, citing *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002), state there are "two ways a constitutional right can be clearly established" when the asserted constitutional right is "tied to judge-made case law." (Doc. 53 at PageID.399). The first way is based on cases

determining particular conduct is unconstitutional but without tying that determination to a particularized set of facts. (Doc. 53). The second way involves cases tied to particularized facts, where the question then becomes whether the facts are "fairly distinguishable." (*Id.*).

Plaintiffs do not clearly identify the method(s) on which they rely. However, their argument seems to be based primarily on the "first" method described in *Hubbert, supra*. Plaintiffs argue there are materially similar decision of the Supreme Court to demonstrate existing precedent has clearly established the law. However, on whatever method Plaintiffs base their argument, the Court concludes Plaintiffs have failed to demonstrate a "clearly established" constitutional right.

"In summary," Plaintiffs argue, "Defendants' assessment of impact fees against Plaintiffs did not follow the applicable constitutional guidelines established by *Sheetz* [*v. County of El Dorado, Ca.*, 601 U.S. 267 (2024)], *Koontz* [*v. St. Johns River Mgmt. Dist.,* 570 U.S. 595 (2013)], *Nollan* [v. *California Coastal, Comm'n*, 483 U.S. 825 (1987)], *Dolan* [v. City of Tigard, 512 U.S. 374 (1994)], or even *Penn Central [Transportation Co. v. New York City,* 438 U.S. 104 (1978)], and, therefore, violated Plaintiffs' Fifth Amendment right to be free of Defendants' unconstitutional taking of their property rights without just compensation." (Doc. 53 at PageID.398). The threshold question is whether the premise of Plaintiffs' argument is valid. That is, are the cases on which Plaintiffs rely applicable? Do they "place the law 'beyond debate.'" *Locure*, 166 F.4th at 129. Are those cases materially similar or are they fairly distinguishable from the facts of this case?

Defendants argue the cases on which Plaintiffs rely are inapposite because they involve a "special application" of the unconstitutional conditions doctrine specifically to building or other

land development permits that are not involved in this case. Defendants contend the water and sewer connection impact fees imposed by the Board are user fees, and are otherwise materially distinguishable from the land development permits at issue in the caselaw on which Plaintiffs rely.

Plaintiffs' focus primarily on the United States Supreme Court opinion in *Sheetz,* 601 U.S. 267. According to Plaintiffs, *Sheetz* "directly determined that sewer and water impact fees – precisely the fees at issue in this case – are subject to the constitutional conditions doctrine." (Doc. 53 at PageID.400). Plaintiffs argue *Sheetz* abrogated the Alabama Supreme Court decision in *St. Clair County Home Builders Ass'n v. City of Pell City*, 61 So.3d 992 (Ala. 2010), specifically, its holding "that *Nollan* and *Dolan* **did not** apply to sewer and water impact fees." (*Id.* (emphasis in original)). Plaintiffs characterizes *Sheetz* as "directly on point" and argues it "eliminates Defendants' claim of qualified immunity." (*Id.*).

The Court is unpersuaded by Plaintiffs' argument generally and their characterization of *Sheetz* specifically. Plaintiffs' reliance on *Sheetz*, as well as on *Nollan* and *Dolan* is misplaced. First, as Defendants correctly note, the Supreme Court's abrogation of *St. Clair* in *Sheetz* did not confirm "sewer and water impact fees are subject to the guidelines of *Sheetz*, *Nollan* and *Dolan*." (Doc. 57 at PageID.454). Rather, *Sheetz* and the other cases on which Plaintiffs rely, involved a condition imposed on the issuance of a land development permit. The issue before the Court in *Sheetz* was whether a *legislative* imposition of a traffic impact fee charged as a condition for the issuance of a building permit constituted an unconstitutional condition. In *St. Clair*, the Alabama Supreme Court held the unconstitutional conditions doctrine did not extend to such legislatively imposed impact fees. It was that holding the Supreme Court in *Sheetz* abrogated.

Additionally, the holdings in the cases on which Plaintiffs rely focused on considerations distinctive to building and land development permits. The Supreme Court in *Koontz* explained "*Nollan* and *Dolan* 'involve a special application' of [the unconstitutional conditions] doctrine that protects the Fifth Amendment right to just compensation for property the government takes when owners apply for **land-use permits**." 570 U.S. at 604 (emphasis added). The Court recognized "[e]xtortionate demands for property **in the land-use permitting context.**" *Id.* at 607. "The central concern of *Nollan* and *Dolan*" is "the risk that the government may use its substantial power and discretion **in land-use permitting** to pursue governmental ends that lack an essential nexus and rough proportionality to the effects of the proposed new use of the specific property at issue, . . . ." *Id.* at 614 (emphasis added). The Court in Koontz recognized the "**special vulnerability of land-use permit applicants** to extortionate demands for money." *Id.* at 619 (emphasis added).

In *Sheetz*, the Supreme Court recognized building "permit conditions are more complicated." 601 U.S. at 274 (emphasis added). The problem comes "when the government [] conditions a building permit for reasons unrelated to its land-use interests." *Id.* at 275. The Supreme Court explained *Nollan* and *Dolan* address this particular abuse that may arise in the context of building permits. *Id.* "Our decisions in *Nollan* and *Dolan* address this potential abuse of the permitting process." *Id.* The Court then made clear it was not addressing impact fees. *Id.* at 280 ("We do not address the parties' other disputes over the validity of the traffic impact fee."

Plaintiffs also argue City of Bayou La Batre Zoning and Subdivision Ordinances condition development permits on Board water and sewer approvals. (Doc. 53 at PageID.389). This

argument is not clearly supported by the text of the subject ordinances and regulations, made exhibit to Defendants' Reply. (Docs. 57 at PageID.456, 57-1 and 57-2).

In answering the specific question of whether Plaintiffs have demonstrated a "clearly established" constitutional right for purposes of qualified immunity under the facts of this case, the Court will not afford *Nollan* and *Dolan* the expansive reading Plaintiffs urge. The Supreme Court has itself cautioned, "we have not extended the rough-proportionality test of *Dolan* beyond the special context of exactions - land-use decisions conditioning approval of development on the dedication of property to public use." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 702 (1999).

In sum, Plaintiffs read *Sheetz* and other Supreme Court precedent too generally and expansively for purposes of a qualified immunity analysis. The cases on which Plaintiffs rely do not support their argument Defendants' impact fees in this case violate a "clearly established" constitutional right under the Takings Clause. Also, for the reasons set out in Defendants' briefing, the Court reaches the same conclusion as to Plaintiffs' Equal Protection Clause claim. Plaintiffs have not demonstrated the law has been placed beyond debate. The Court concludes Defendants' Motion to Dismiss Plaintiffs' Takings Clause, Equal Protection Clause, and Unconstitutional Condition claims against McCrory and the Individual Defendants in their individual capacities is due to be GRANTED.

**b. Remaining Individual Claims and Board Claims**

In light of the applicable legal standard, the remaining grounds of Defendants' Motion to Dismiss are not well taken. The Court must take the non-conclusory factual allegations of the First Amended Complaint as true and view them in the light most favorable to Plaintiffs. Doing

so, and for reasons set out in Plaintiffs' Opposition and at oral argument, the Court cannot find the First Amended Complaint does not contain sufficient factual allegations to state claims to relief that are "plausible on [their] face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). As such, the Court concludes Defendants' Motion to Dismiss, except for those individual claims set out III. a., *supra*, is due to be DENIED.

**c. Water Supply Board**

For the reasons stated in Defendants' briefing, the Court concludes Plaintiffs have failed to allege any plausible claim against Defendant Water Supply Board. Therefore, the Motion to Dismiss as to Water Supply Board is due to be GRANTED.

**CONCLUSION**

Board Defendants' Motion to Dismiss (Doc. 35) is GRANTED IN PART and DENIED IN PART, as follows:

1. Plaintiffs' Takings, Equal Protection, and Unconstitutional Conditions claims against Defendants Dan McRory, Silvia Raley, Virginia Bryant, Jeffrey Ladnier, Roger Milney, and Kimberlyn Barbour, in their individual capacities, are DISMISSED.
2. All damages claims against Defendants Dan McRory, Silvia Raley, Virginia Bryant, Jeffrey Ladnier, Roger Milney, and Kimberlyn Barbour in their official capacities are DISMISSED.
3. The Motion to Dismiss Plaintiffs' claims for prospective injunctive relief against Defendants Dan McRory, Silvia Raley, Virginia Bryant, Jeffrey Ladnier, Roger Milney, and Kimberlyn Barbour in their official capacities is DENIED.

4. The Motion to Dismiss Plaintiffs' claims against the Defendant Utility Board of the City of Bayou La Batre is DENIED.
5. The Motion to Dismiss claims against Defendant Water Supply Board of the City of Bayou La Batre is GRANTED.

**DONE and ORDERED** this 30th day of September, 2026.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE